**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SIDNEY KOMISAR, | : | |
| | : | Case No. 26-cv-2510-PAE |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRUIST BANK, | : | |
| | : | |
| Defendant. | : | |

---

**DEFENDANT TRUIST BANK'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Truist Bank ("Truist") moves to dismiss the Amended Complaint of Plaintiff Sidney Komisar. The reasons in support of this Motion are set forth in the Memorandum of Law.

Dated: June 24, 2026

Respectfully submitted,

/s/ Aleksandr Altshuler
John D. Sadler (*pro hac vice forthcoming*)
Aleksandr Altshuler
Terrance A. Mebane (*pro hac vice forthcoming*)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 223-0200
*sadlerj@ballardspahr.com*
*altshulera@ballardspahr.com*
*mebanet@ballardspahr.com*

*Counsel for Defendant Truist Bank*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SIDNEY KOMISAR, | : | |
| | : | Case No. 26-cv-2510-PAE |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRUIST BANK, | : | |
| | : | |
| Defendant. | : | |

# DEFENDANT TRUIST BANK'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dated: June 24, 2026

John D. Sadler (*pro hac vice forthcoming*)
Aleksandr Altshuler
Terrance A. Mebane (*pro hac vice forthcoming*)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 223-0200
*sadlerj@ballardspahr.com*
*altshulera@ballardspahr.com*
*mebanet@ballardspahr.com*

*Counsel for Defendant Truist Bank*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
BACKGROUND ..... 2
ARGUMENT ..... 2
A. Legal Standard ..... 2
B. Komisar Lacks Standing to Pursue Claims Against Truist ..... 3
C. The UCC Claim (Count I) Fails As A Matter of Law ..... 4
1. The UCC Claim Fails Because Komisar Lacks Privity With Truist ..... 4
2. Komisar Fails to State a Claim Under UCC § 4-A-202(2) Because He Is Not A Truist Customer and the Wire Transfer at Issue Was Authorized ..... 7
D. The Negligence Claim (Count II) Fails Because UCC Article 4-A Displaces Common Law Claims, and Truist Owes No Duty To Non-Customers ..... 8
1. The Negligence Claim Is Displaced By UCC Article 4-A ..... 8
2. The Negligence Claim Fails Because Truist, as a Bank, Owes No Duty of Care to Komisar, as a Non-Customer ..... 12
CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*123RF LLC v. HSBC Bank USA, N.A.*,
663 F.Supp.3d 391 (S.D.N.Y. 2023)....10, 14

*Abhyankar by Behrstock v. JPMorgan Chase, N.A.*,
No. 18-cv-9411, 2020 WL 4001661 (S.D.N.Y. July 15, 2020)....13

*Adkins v. Sogliuzzo*,
625 Fed. Appx. 565 (3d Cir. 2015)....10, 14

*In re Agape Litig.*,
681 F. Supp.2d 352 (E.D.N.Y. 2010)....13

*Approved Mortg. Corp. v. Truist Bank*,
No. 22-3163, 106 F.4th 582 (7th Cir. 2024)....6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*,
215 F. Supp.3d 302 (S.D.N.Y. 2016)....10, 14

*Beck v. Metro. Bank Holding Corp.*,
747 F. Supp.3d 442–-56 (E.D.N.Y. Aug. 16, 2024)....11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....2

*Bernstein v. City of New York*,
621 F. App'x 56 (2d Cir. 2015)....3

*Curley v. AMR Corp.*,
153 F.3d 5 (2d Cir. 1998)....12

*DeFazio v. Wells Fargo Bank, N.A.*,
No. 20-375, 2020 WL 1888252 (D.N.J. April 16, 2020)....14

*Drosos & Assocs., P.C. v. TD Bank, N.A.*,
No. 23-1275, 2024 WL 863319 (D.N.J. Feb. 29, 2024)....10, 14

*Fillmore East BS Subsidiary LLC v. Capmark Bank*,
552 F. App'x 13 (2d Cir. 2014)....13

*Fischer & Mandell LLP v. Citibank, N.A.*,
632 F.3d 793 (2d Cir. 2011), *appeal withdrawn*, No. 23-7661, 2024 WL 1985513 (2d Cir. Apr. 10, 2024) ........ 8, 9, 10, 14

*Fisher v. N.Y. Chase Manhattan Bank*,
16 Civ. 6030, 2018 WL 1274560 (S.D.N.Y. Mar. 8, 2018), *aff'd sub nom. Fisher v. JPMorgan Chase Bank, N.A.*, 740 F. App'x 745 (2d Cir. 2018) ........ 13

*Frankel-Ross v. Congregation OHR Hatalmud*,
No. 15 CIV. 6566 (NRB), 2016 WL 4939074 (S.D.N.Y. Sept. 12, 2016) ........ 5

*Harborview Capital Partners, LLC v. Cross River Bank*,
600 F. Supp.3d 485 (D.N.J. Apr. 26, 2022) ........ 8

*Jajati v. JPMorgan Chase Bank, N.A.*,
711 F. Supp.3d 169 (E.D.N.Y 2024) ........ 11

*Kirschner v. Wells Fargo Bank*,
No. 21-CV-10785, 2021 WL 5545957 (E.D. Mich. July 19, 2021) ........ 11

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ........ 13

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
597 F.3d 84 (2d Cir. 2010) ........ 4, 9

*Markatos v. Citibank, N.A.*,
760 F. Supp. 3d 70 (S.D.N.Y. 2024) ........ 11

*McCarthy v. JP Morgan Chase Bank*,
772 F. Supp. 3d 298 (E.D.N.Y. 2025), *appeal withdrawn*, No. 25-1041, 2025 WL 2985923 (2d Cir. Oct. 9, 2025) ........ 9, 12, 13

*Niram, Inc. v. Sterling Nat'l Bank*,
697 F.Supp.3d 15 (S.D.N.Y. 2023) ........ 8

*Nova Mar. B.V.I. Ltd. v. Transvast Shipping Co.*,
No. 08 CIV. 6869 (SAS), 2009 WL 4884162 (S.D.N.Y. Dec. 16, 2009) ........ 6

*Pedersen v. MidFirst Bank*,
527 F. Supp.3d 188 (N.D.N.Y. 2021) ........ 10

*Scura, Wigfield, Heyer, Stevens & Commarota, LLP v. Citibank, NA*,
No. 21-12835, 2022 WL 16706948 (D.N.J. Oct. 3, 2022) ........ 6

*Serengeti Express, LLC v. JPMorgan Chase Bank, N.A.*,
No. 19-cv-5487, 2020 WL 2216661 (S.D.N.Y. May 7, 2020) ........ 12, 13

*Wellton Int'l Express v. Bank of China (Hong Kong)*,
612 F. Supp.3d 358 (S.D.N.Y. 2020)....................5, 8, 12

**State Cases**

*Banco Mercantil De Sao Paulo S.A. v. Nava*,
466 N.Y.S.2d 198 (1983)....................10

*Banque Worms v. BankAmer. Int'l*,
77 N.Y.2d 362, 568 N.Y.S.2d 541 (1991)....................9

*Blum v. Citibank, N.A.*,
81 N.Y.S.3d 51 (2018)....................8

*Cruise.com Corp. v. Aliksanyan*,
847 N.Y.S.2d 896 (2007)....................9, 13

*L&M Const. Dry Wall Inc. v. Wells Fargo Bank, N.A.*,
No. 608951/2020, 2022 WL 20472238 (N.Y. Sup. Ct. Mar. 21, 2022)....................7, 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank*,
57 N.Y.2d 439, 456 N.Y.S.2d 742 (1982)....................13

*Proactive Dealer Servs., Inc. v. TD Bank*,
131 A.D.3d 1216 (2015)....................7

*State v. Barclays Bank of N.Y., N.A.*,
76 N.Y.2d 533, 561 N.Y.S.2d 697 (1990)....................3

**State Statutes**

NY UCC § 1-103....................10

NY UCC § 4-A-102....................4, 9

NY UCC § 4-A-103....................4

NY UCC § 4-A-104....................4

NY UCC § 4-A-202....................8

NY UCC § 4-A-203....................8

NY UCC § 4-A-204....................8

NY UCC § 4-A-205....................8

NY UCC § 4-A-209....................4

NY UCC § 3-419 ....................................................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 2

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Truist Bank ("Truist") submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint of Plaintiff Sidney Komisar ("Komisar").

## INTRODUCTION

The Amended Complaint alleges that Komisar's attorney received settlement funds meant for Komisar, and a fraudster tricked Komisar's attorney into wiring the funds to the fraudster's account at Truist. On that basis, Komisar seeks to hold Truist liable for the scheme by asserting claims for negligence and violation of the New York Uniform Commercial Code ("UCC"), including UCC 4-A-202(2). As explained below, both claims fail as a matter of law.

As a threshold matter, Komisar lacks standing. Komisar has had no dealings with Truist—the funds at issue were sent from his attorney's trust account, not Komisar's account, and Komisar never had possession of the funds. Komisar's connection to Truist is too far attenuated to support a claim of standing against Truist.

Even if Komisar had standing, the UCC claim would still fail for two reasons: first, Komisar, as a non-customer, lacks the requisite privity with Truist to maintain a claim under UCC § 4-A; and second, UCC § 4-A-202(2) only applies to unauthorized transactions involving a bank and its customers, and the transactions at issue were authorized by a non-Truist customer.

The negligence claim also fails for two reasons: first, common law claims related to wire transfers are displaced by UCC § 4-A, which is the exclusive means for determining the rights, duties, and liability with respect to wire transfers; and second, negligence requires a duty, and banks owe no duty of care to non-customers, such as Komisar (or his attorney). For these reasons, the Amended Complaint fails as a matter of law and should be dismissed.

## BACKGROUND

The Amended Complaint alleges that Komisar received a financial settlement from a lawsuit in September 2025 and that the funds from that settlement were deposited into Komisar's attorney's trust account at Chase Bank. Am. Compl. ¶¶ 5–7. Shortly thereafter, Komisar's attorney "received fraudulent wire instructions, from an account appearing to be Komisar's email account but slightly different." Am. Compl. ¶ 15. These wire instructions were from "fraudsters," and Komisar's attorney "engaged with the fraudsters, believing them to be Komisar[.]" Am. Compl. ¶ 16. On October 6, 2025, Komisar's attorney transferred by wire $100,000 to a Truist account belonging to "Placestolove LLC." Am. Compl. ¶¶ 17–18. Eight days later, on October 14, 2025, Komisar alleges that his attorney notified Truist of the alleged fraud. Am. Compl. ¶ 28.

On December 5, 2025, Komisar filed the Complaint in the Superior Court of New Jersey, Mercer County: Law Division. On January 9, 2026, Truist filed a notice of removal to the United States District Court of the District of New Jersey. On January 16, 2026, Truist filed a request for a pre-motion conference in order to submit a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Docket No. 4. After the parties met and conferred, on January 30, 2026, Komisar requested leave to file an amended complaint. Docket No. 6.

On March 26, 2026, the case was transferred to this Court. On May 6, 2026, the Court held an initial pretrial conference. On May 13, 2026, Truist filed a motion to dismiss the Complaint. On June 3, 2026, Komisar filed the Amended Complaint.

## ARGUMENT

### A. Legal Standard

Under Rule 12(b)(6), a complaint must include sufficient "factual allegations to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to survive a motion to dismiss, the plaintiff

cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

### B. Komisar Lacks Standing to Pursue Claims Against Truist

As a threshold matter, Komisar lacks standing to pursue the claims asserted in the Amended Complaint. "To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015).

Komisar merely alleges that his attorney owes him funds from a settlement and that his attorney wired funds from his firm's trust account to a person's account at Truist. Nothing about those allegations is sufficient to give Komisar standing as to any claim against Truist. Komisar's attorney still owes Komisar whatever funds he is entitled to receive from his settlement. The fact that Komisar's attorney independently sent funds to a different person, does not relieve his attorney's obligation to pay Komisar whatever amounts he is owed. By that same token, Komisar's attorney's wire to an account at Truist does not give Komisar standing to recover those funds on his attorney's behalf. In these circumstances, Komisar does not and cannot allege an injury, any connection to Truist, or that any decision in this case would redress any injury to him. For this reason alone, the Amended Complaint should be dismissed. *See State v. Barclays Bank of N.Y., N.A.*, 76 N.Y.2d 533, 561 N.Y.S.2d 697 (1990) ("The checks were never actually or constructively delivered to plaintiff. It, therefore, never acquired a property interest in them and cannot be said to have suffered a loss.").

### C. The UCC Claim (Count I) Fails As A Matter of Law

Komisar alleges that Truist violated the UCC, and specifically, UCC § 4-A-202(2) by "failing to safeguard" the wire sent by his attorney. Article 4-A governs electronic funds transfers. *See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 87 (2d Cir. 2010). As explained below, Komisar cannot state a claim under Article 4-A against Truist because he lacks privity with Truist, and any claim under UCC § 4-A-202(2) fails because that provision only applies to a bank's "customer," which he is not, and the wire at issue was authorized.

#### 1. The UCC Claim Fails Because Komisar Lacks Privity With Truist

As another threshold matter, the Court should dismiss the Amended Complaint because Komisar lacks the requisite privity with Truist to assert a claim under the UCC. Under the UCC, every wire transfer (*i.e.*, funds transfer) is comprised of a series of payment orders. *See*, *e.g.*, NY UCC § 4-A-102, cmt. The first payment order is initiated by an "originator," here, Komisar (or more accurately, Komisar's attorney). *See* NY UCC § 4-A-104(3). The originator's bank receives the originator's payment order directly from the originator. *See* NY UCC § 4-A-104(4). This completes the first payment order in the series.

The originator's bank then initiates the second payment order in the series. In this second payment order, Komiar's bank (or more accurately, Komisar's attorney's bank) sent Truist, the beneficiary's bank, the payment order. *See* NY UCC § 4-A-103(1)(c). Truist accepted the payment order and credited it to the account stated in that payment order. *See* NY UCC § 4-A-209(2). The payment orders comprising the subject wire transfer can be visually depicted as follows:




An understanding of the process, and an understanding of the distinctions between the originator's bank and the beneficiary's bank, are crucial. Article 4-A permits only those in privity with a beneficiary's bank to assert claims against the beneficiary bank. *See, e.g.*, *Grain Traders*, 160 F.3d 97, 102 (2d Cir. 1998) (holding that "each sender of a payment order" may "seek refund only from the receiving bank it paid," and explaining that disregard of the privity requirement "would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer"); *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 364 (S.D.N.Y. 2020) (Article 4-A "incorporates a privity requirement . . . so that the remedy applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." (internal citations and quotation marks omitted)).

Thus, courts routinely dismiss Article 4-A claims where privity is lacking. *See, e.g.*, *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp.3d 358, 364 (S.D.N.Y. 2020) ("Because there is a lack of privity between Plaintiffs and Wells Fargo, and between Plaintiffs and JP Morgan, Plaintiffs cannot maintain a cause of action against either defendant[.]"); *Frankel-Ross v. Congregation OHR Hatalmud*, No. 15 CIV. 6566 (NRB), 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016) (explaining that "Section 4-A-402 incorporates a 'privity' requirement . . . so that

it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole" and that the plaintiff "cannot maintain a cause of action pursuant to Section 4-A-207 against" the bank to which she lacks privity.); *Nova Mar. B.V.I. Ltd. v. Transvast Shipping Co.*, No. 08 CIV. 6869 (SAS), 2009 WL 4884162, at *2 (S.D.N.Y. Dec. 16, 2009) ("[G]enerally, privity is required between the party seeking a refund and the bank from which it seeks that refund."); *Scura, Wigfield, Heyer, Stevens & Commarota, LLP v. Citibank, NA*, No. 21-12835, 2022 WL 16706948, at *2-5 (D.N.J. Oct. 3, 2022) (dismissing claims under UCC Article 4A because of lack of privity); *Approved Mortg. Corp. v. Truist Bank*, No. 22-3163, 106 F. 4th 582 (7th Cir. 2024) (same).

As noted by the Second Circuit, "there are sound policy reasons for limiting the right to seek a refund to the sender who directly paid the receiving bank." *Grain Traders*, 160 F.3d at 102. An originator's bank may have defenses (contractual or otherwise) to claims brought against it by its customer, a wire-transfer originator. In that circumstance, allowing the originator to "skip over the bank with which it dealt directly, and go to the next bank in the chain, would result in uncertainty as to rights and liabilities, would create risk of multiple or inconsistent liabilities," and would require banks with no relationship with the wire-transfer originator "to investigate the financial circumstances and various legal relations of the other parties to the transfer." *Id.*[1] Furthermore, the UCC does not recognize a distinction for situations in which an originator is fraudulently induced to wire-transfer funds by a bad actor (as Komisar alleges here).

Here, Komisar lacks the requisite privity with Truist. Komisar never initiated a funds transfer from his bank to Truist. Komisar's bank never received a payment order from Komisar to

[1] Allowing such claims "would impede the use of rapid electronic funds transfers in commerce by causing delays and driving up costs." *Grain Traders*, 160 F.3d at 102. It would also compel a beneficiary's bank to, in effect, act as the insurer of non-customers' banking transactions.

transfer funds to Truist or a beneficiary with an account at Truist. Instead, Komisar's attorney initiated a funds transfer and Komisar's attorney's bank transferred funds to an account at Truist. Komisar's only connection to Truist is through his attorney, who's bank apparently transferred funds to a fraudster who previously had an account with Truist.

Even assuming Komisar had initiated the payment transfer, any UCC claim would still fail because Komisar is not in privity with and has no relationship with Truist. An originator only has privity with his bank as the originating bank. Likewise, only a beneficiary has privity with the beneficiary bank. Thus, even if Komisar were standing in the shoes of an originator, he still could not assert a claim against Truist for lack of privity. To the extent an originator has a claim concerning a payment transfer, he must raise that claim with his own bank, if at all. In these circumstances, Komisar's connection to Truist is too far attenuated to support a claim by Komisar against Truist. Count I for violation of the UCC should be dismissed.

### 2. Komisar Fails to State a Claim Under UCC § 4-A-202(2) Because He Is Not A Truist Customer and the Wire Transfer at Issue Was Authorized

Komisar also cannot maintain its claim against Truist under UCC § 4-A-202(2) because he is not a Truist customer and that provision only applies to unauthorized transactions. UCC § 4-A-202 only imposes liability (in certain circumstances) for unauthorized wire transfers between a bank and its customer. *See* NY UCC § 4-A-202(2) (expressly referring to "a bank and its customer"); *L&M Const. Dry Wall Inc. v. Wells Fargo Bank, N.A.*, No. 608951/2020, 2022 WL 20472238, at *3 (N.Y. Sup. Ct. Mar. 21, 2022)) ("Pursuant to UCC 4-A-202, a bank is liable to *its customer* for the *unauthorized* transfer of funds from a customer's account unless the bank can demonstrate that a commercially reasonable security procedure is in place (or has been offered to the customer."); *Proactive Dealer Servs., Inc. v. TD Bank*, 131 A.D.3d 1216, 1220 (2015). Where "the plaintiff is admittedly not a customer of [the bank] and authorized the wire transfer, its

allegations sounding in violations of New York Uniform Commercial Code §§ 4-A-202, 4-A-203, 4-A-204, 4-A-205, and 4-A-203 are insufficiently pled." *L&M Const. Dry Wall Inc.*, 2022 WL 20472238, at *3. *See also Harborview Capital Partners, LLC v. Cross River Bank*, 600 F. Supp.3d 485, 495-96 (D.N.J. Apr. 26, 2022) ("The customer who, sadly, has been the victim of a third-party fraud cannot shift the loss to a bank that faithfully executed the customer's instructions to implement a transfer."). Here, neither Komisar nor his attorney are Truist customers. The Court need go no further. For this reason alone, Komisar cannot assert a claim under UCC § 4-A-202(2).

Any claim under UCC § 4-A-202(2) also fails because the wire transfer at issue was authorized. UCC § 4-A-202(2) expressly only applies to unauthorized transfers. *See Wellton Int'l Express*, 612 F. Supp.3d at 364 ("And because Plaintiffs authorized the transfer, even erroneously, no cause of action lies."); *Blum v. Citibank, N.A.*, 81 N.Y.S.3d 51, 52 (2018) (finding no legally cognizable cause of action where the plaintiff authorized transfers based on "fraudulent misrepresentations by [a] third party."). Here, the wire transactions at issue were authorized. Even if Komisar's attorney was duped by a third-party fraudster, there is no dispute that he authorized the transactions. In these circumstances, any claim under UCC § 4-A-202(2) necessarily fails as a matter of law.

### D. The Negligence Claim (Count II) Fails Because UCC Article 4-A Displaces Common Law Claims, and Truist Owes No Duty To Non-Customers

#### 1. The Negligence Claim Is Displaced By UCC Article 4-A

The negligence claim fails as a matter of the law because common law claims related to wire transfers are displaced by Article 4-A of the UCC. Article 4-A "governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers." *Niram, Inc. v. Sterling Nat'l Bank*, 697 F.Supp.3d 15 (S.D.N.Y. 2023) (citing *Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 797 (2d Cir. 2011), *appeal withdrawn*, No. 23-7661, 2024 WL 1985513 (2d Cir.

Apr. 10, 2024).). *See also McCarthy v. JP Morgan Chase Bank*, 772 F. Supp. 3d 298, 308–09 (E.D.N.Y. 2025), *appeal withdrawn*, No. 25-1041, 2025 WL 2985923 (2d Cir. Oct. 9, 2025) "[A] funds transfer," as defined in Article 4-A, is "also commonly referred to in the commercial community as a wholesale wire transfer." NY UCC § 4-A-102, cmt.

Article 4-A was promulgated to "address the problems presented by the widespread use of electronic funds transfers." *Ma*, 597 F.3d at 89. Article 4-A created a "comprehensive body of law" that "use[s] precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability." NY UCC § 4-A-102, cmt.; *see also Ma*, 597 F.3d at 87–89 (citing *Banque Worms v. BankAmer. Int'l*, 77 N.Y.2d 362, 568 N.Y.S.2d 541 (1991)). The statute "reflects a deliberate decision . . . to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment." *Ma*, 597 F.3d at 89 (citing NY UCC § 4-A-102, cmt.). Thus, the drafters designed Article 4-A to be the "*exclusive means* of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." *Fischer*, 632 F.3d at 801 (quoting NY UCC § 4–A–102, cmt.) (emphasis added).

Accordingly, Article 4-A precludes common law claims that arise out of wire transfers "when such claims would impose liability *inconsistent with* the rights and liabilities expressly created by Article 4-A." *Id.* at 797 (emphasis added). In other words, "resort to principles of law or equity outside of Article 4-A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." NY UCC § 4-A-102, cmt.

Courts thus routinely dismiss common law claims by non-customers related to electronic funds transfers. *See, e.g.*, *Cruise.com Corp. v. Aliksanyan*, 847 N.Y.S.2d 896 (Table) (2007) (holding "that plaintiff's common law theor[y] of liability for . . . negligence must be dismissed

since article 4-A of the UCC has preempted the field"); *Banco Mercantil De Sao Paulo S.A. v. Nava*, 466 N.Y.S.2d 198, 202 (1983) ("Plaintiff, however, fails to set forth a cause of action for conversion recognized under § 3-419 U.C.C. In accord with § 1-103 U.C.C. general principles of law and equity supplement the code provisions unless displaced by a particular provision. Plaintiff's cause of action in conversion fails to fit into any of the categories of § 3-419 U.C.C., and therefore, is dismissed."); *Fischer*, 632 F.3d at 801 ("The district court correctly held that Article 4–A preempted any common law claims inconsistent with its provisions."); *Pedersen v. MidFirst Bank*, 527 F. Supp.3d 188, 193 (N.D.N.Y. 2021) ("Article 4A displaces any common law claim if the UCC's provisions squarely cover the transactions at issue, . . . and was intended to be the exclusive means of determining the rights, duties and liabilities of banks and their customers with respect to such transfers.") (citation omitted); *Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*, 215 F. Supp.3d 302, 306 (S.D.N.Y. 2016) (granting defendant's motion to dismiss plaintiff's negligence claim because the claim was precluded by U.C.C. Article 4-A); *123RF LLC v. HSBC Bank USA, N.A.*, 663 F.Supp.3d 391, 399–403 (S.D.N.Y. 2023) (finding at the motion to dismiss stage that a plaintiff's negligence, gross negligence, and breach of contract claims were preempted by U.C.C. Article 4-A); *Adkins v. Sogliuzzo*, 625 Fed. Appx. 565, 569–70 (3d Cir. 2015) (affirming judgment for defendant bank on negligence claim where plaintiff "was not a customer" and failed to "establish the existence of a special relationship"); *Drosos & Assocs., P.C. v. TD Bank, N.A.*, No. 23-1275, 2024 WL 863319 (D.N.J. Feb. 29, 2024) (dismissing negligence claim where plaintiffs failed to identify duty owed to them by creditor and conversion claim as inconsistent with Article 4A of the UCC).

Here, Komisar's reliance on common law theories would impose liability inconsistent with UCC Article 4-A. By attempting to impose common law liability on a bank for processing an

*authorized* transfer—even if fraudulently induced by a third party—Komisar is inverting the risk allocation scheme in a way that is fundamentally incompatible with Article 4-A. *Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 82 (S.D.N.Y. 2024) ("Plaintiff's theory of liability is inconsistent with the exception to this default rule, because, by attempting to impose common law liability on a bank for processing an *authorized* transfer—even if fraudulently induced by a third party—Plaintiff is inverting this risk allocation scheme in a way that is fundamentally incompatible with Article 4-A."); *Beck v. Metro. Bank Holding Corp.*, 747 F.Supp.3d 442, 455–-56 (E.D.N.Y. Aug. 16, 2024). ("Article 4-A does not require banks to bear the risk of loss for failing to abide by certain security procedures where the sender has directly authorized the transfer under Section 202(1)"); *id.* at 459 n.21 (collecting cases).

Because allowing such claims would plainly be inconsistent with Article 4-A, courts in the Second Circuit and elsewhere have similarly concluded that Article 4-A preempts common law claims where the customer authorized wire transfers, even when that authorization was induced by third-party fraud. *Beck*, 747 F. Supp.3d at 457–59 (finding a breach of contract claim was preempted because "holding [defendant] liable in this context, where [plaintiff] authorized both Wire Transfers, is inconsistent with Article 4-A, . . . even where the plaintiff was allegedly induced to take that action by various fraudulent representations made by [a] third party" (internal citation and quotation marks omitted)); *Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp.3d 169, 177 (E.D.N.Y 2024) (rejecting a similar argument because it was "simply another way of saying that [d]efendant should have canceled the wire transfers upon learning of the fraud," which "is no different than had [p]laintiff attempted to cancel the transactions . .  after [the bank] had begun to process the orders. In other words, [p]laintiff is complaining about conduct that is squarely within the ambit of Article 4-A."); *Kirschner v. Wells Fargo Bank*, No. 21-CV-10785, 2021 WL 5545957,

at *3 (E.D. Mich. July 19, 2021) (dismissing a conversion claim based on fraudulently induced wire transfers because "[i]mposing liability on a receiving bank for declining to agree to cancel a funds transfer would be inconsistent with Article [4-A]," as adopted in Michigan); Wellton Int'l Express v. Bank of China (Hong Kong), 612 F. Supp.3d 358, 363–64 (S.D.N.Y. 2020) (finding a bank not liable under Article 4-A for losses resulting from a transfer initiated in response to third-party fraud because the transfer was "unequivocally authorized").

The UCC's express statutory scheme simply does not allow for recovery of the common law negligence claim asserted by Komisar. The negligence claim stems from the transfer of funds by Komisar's attorney to fraudsters who apparently once held an account at Truist. But as a non-customer, Komisar's rights with respect to that transfer are governed by and otherwise displaced by the UCC. To the extent Komisar, as a non-customer, has a viable claim against Truist, that claim would have to be asserted under the UCC, if at all. He cannot rely on common law theories against Truist stemming from electronic funds transfer. For this reason alone, the Amended Complaint should be dismissed.

**2. The Negligence Claim Fails Because Truist, as a Bank, Owes No Duty of Care to Komisar, as a Non-Customer**

The negligence claim also fails and should be dismissed because Truist owes no duty of care to non-customers, such as Komisar. To establish a prima facie case of negligence under New York law, the plaintiff must allege three elements: "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." *McCarthy*, 772 F. Supp.3d at 314 (citing *Serengeti Express, LLC v. JPMorgan Chase Bank, N.A.*, No. 19-cv-5487, 2020 WL 2216661 (S.D.N.Y. May 7, 2020); *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998)).

"In order to state a negligence claim, the alleged duty of care must arise under New York tort law, independent of any duties created by contract." *Id.* (citing *Fillmore East BS Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 19 (2d Cir. 2014). "New York courts have long held that the relationship between an accountholder and his bank is contractual." *Id.* (citing *Serengeti*, 2020 WL 2216661, at *3–4; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank*, 57 N.Y.2d 439, 444, 456 N.Y.S.2d 742 (1982) ("[T]he underlying relationship between a bank and its depositor is the contractual one of debtor and creditor, implicit in which is the understanding that the bank will pay out its customer's funds only in accordance with the latter's instructions.")). "Indeed, '[t]ypically, under New York law, a bank does not have an extracontractual duty to its depositors.'" *Id.* (quoting *Abhyankar by Behrstock v. JPMorgan Chase, N.A.*, No. 18-cv-9411, 2020 WL 4001661, at *5 (S.D.N.Y. July 15, 2020)).

It is well-settled under New York law that banks do not owe non-customers a duty of care. *Pincover*, 592 F. Supp. 3d at 229; *Fisher v. N.Y. Chase Manhattan Bank*, 16 Civ. 6030, 2018 WL 1274560, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd sub nom. Fisher v. JPMorgan Chase Bank, N.A.*, 740 F. App'x 745 (2d Cir. 2018) (summary order); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286–87 (2d Cir. 2006) ("[B]anks do not owe non-customers a duty to protect them from the intentional torts of their customers . . . With billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public."); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("Neither the Plaintiffs nor the Court have been able to locate a case which even suggests that New York law imposes upon banks a duty to protect non-customers from a fraud involving depository accounts.").

When confronted, courts routinely dismiss negligence claims by non-customers against banks. *See, e.g.*, *Cruise.com Corp. v. Aliksanyan*, 847 N.Y.S.2d 896 (Table) (2007) (holding "that

plaintiff' common law theor[y] of liability for . . . negligence must be dismissed since article 4-A of the UCC has preempted the field"); *Fischer*, 632 F.3d at 801 ("The district court correctly held that Article 4–A preempted any common law claims inconsistent with its provisions."); *Adkins v. Sogliuzzo*, 625 Fed. Appx. 565, 569–70 (3d Cir. 2015) (affirming judgment for defendant bank on negligence claim where plaintiff "was not a customer" and failed to "establish the existence of a special relationship"); *Banco del Austro, S.A. v. Wells Fargo Bank, N.A.*, 215 F. Supp. 3d 302, 306 (S.D.N.Y. 2016) (granting defendant's motion to dismiss plaintiff's negligence claim because the claim was precluded by U.C.C. Article 4-A); *123RF LLC v. HSBC Bank USA, N.A.*, 663 F.Supp.3d 391, 399–403 (S.D.N.Y. 2023) (finding at the motion to dismiss stage that a plaintiff's negligence, gross negligence, and breach of contract claims were preempted by U.C.C. Article 4-A); *DeFazio v. Wells Fargo Bank, N.A.*, No. 20-375, 2020 WL 1888252, at *5 (D.N.J. April 16, 2020) (dismissing negligence claim against defendant bank where plaintiff was "not a customer" and failed to allege a "special relationship . . . that might give rise to a duty of care"); *Drosos*, 2024 WL 863319 (dismissing negligence claim where plaintiffs failed to identify duty owed to them by creditor).

Here, the negligence claim should be dismissed because Truist owed Komisar no duty of care. The law is clear that banks generally owe no duty of care to non-customers, and in this case, Komisar is not alleged to be a Truist customer. For this reason alone, the negligence claim should be dismissed.

## CONCLUSION

For these reasons, the Amended Complaint fails to state a claim upon which relief can be granted should be dismissed.

Dated: June 24, 2026

Respectfully submitted,

/s/ Aleksandr Altshuler

John D. Sadler (*pro hac vice forthcoming*)
Aleksandr Altshuler
Terrance A. Mebane (*pro hac vice forthcoming*)
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 223-0200
*sadlerj@ballardspahr.com*
*altshulera@ballardspahr.com*
*mebanet@ballardspahr.com*

*Counsel for Defendant Truist Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June 2026, I caused a true and correct copy of the foregoing to be served electronically upon the following counsel of record:

Martin Shell
The Shell Law Firm PLLC
11 Broadway, Suite 615
New York, NY 10004
*mshell@shelllawfirm.com*

*Counsel for Plaintiff Sidney Komisar*

/s/ Aleksandr Altshuler
Aleksandr Altshuler