UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDNEY KOMISAR, Plaintiff, | CIVIL ACTION NO. 1:26 Civ. 02510 PAE |
| -against- | |
| TRUIST BANK Defendant | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

The Shell Law Firm, PLLC
Martin Shell (MS 5689)
11 Broadway, Suite 615
New York, New York 10004
Telephone: (646) 616-3983
Facsimile: (212) 480-8560
Counsel for Plaintiff

## I. INTRODUCTION

Plaintiff Sidney Komisar ("Plaintiff" or "Komisar") submits this memorandum of law in opposition to the Motion to Dismiss (the "Motion") filed by Truist Bank ("Defendant" or "Truist) The Motion seeks to dismiss Plaintiff's Amended Complaint (the "Amended Complaint," ECF No.26), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth herein, the instant Motion should be denied.

## II. KEY FACTUAL ALLEGATIONS OF THE COMLAINT

Plaintiff alleges in his Amended Complaint the following pertinent facts:

Under false pretenses Komisar's agent/attorney wired $99,988.01 belonging solely to Kmisar to Truist on or about October 6, 2025 (the "Wire"). (¶5-18).

On or October 14, 2025, Truist inquired if the wire was fraudulent. (¶25).

On October 14, 2025, Chase Bank, the originating bank, requested a recall of the Wire from Truist. (¶26).

On October 14, 2025, Truist was notified of the wire fraud by phone and assigned the fraud complaint the following case number UFO number 00000 246 643. (¶29).

On the same date a letter was sent by fax to Truist notifying Truist of the fraud and that a complaint had been filed with the police. (¶27-28).

The next morning on October 15, 2025, Truist was again contacted via (i) phone to the branch manager in Florida and (ii) in person at Truist's Branch in Hamilton New Jersey. Truist advised that the wire was still in their possession and that the fraudsters account with Truist was frozen. (¶31-32).

Despite the foregoing, including Truist's knowledge of the fraud and representation that the account was frozen, an official check was issued by Truist to the fraudster for $99,900.05 on

October 15, 2025. (¶37).

Due to Truist's conduct Plaintiff has suffered damages. (¶38).

## III. ARGUMENT

## DEFENDANT'S MOTION MUST BE DENIED

### *1. Legal Standard*

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

The Court must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

Applying this standard to the facts herein, the Amended Complaint states viable claims for relief consisting of: (i) First Cause of Action for UCC Violation and (ii) a Second Cause of Action for Negligence.

*2. Komisar Has Standing*

Constitutional standing requires (1) an injury-in-fact — that is, an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) that there is a causal connection between the injury and the conduct of which the plaintiff complains, and (3) that it is likely that the injury will be redressed by a favorable decision." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (internal quotation marks and alterations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.C

As alleged in the Amended Complaint, Komisar's agent/attorney sent Komisar's money to a fraudster. In doing so, Komiar has suffered injury that would have been avoided had Truist not released the Wire after acknowledging the fraud. In other words, Komisar was deprived of his money due to Truist's conduct.

Komisar is in a similar position to Welton Express in the matter of *Wellton International Express v. Bank of China (Hong Kong)* in which the Court over the bank's (Chase) objection found Welton Express to have standing. The Court stated,

> "JP Morgan argues that because the funds at issue never belonged to Wellton Express, it cannot allege that it suffered such an injury-in-fact. However, the obvious injury here is that Wellton Express was deprived of money that was clearly intended for it. And while JP Morgan argues that there is no causal connection between that harm and JP Morgan's conduct because JP Morgan was required under the UCC to execute an authorized payment order, that is a merits question rather than a standing question. 612 F.Supp.3d 358 (S.D.N.Y. 2020).

Based on these circumstances Komisar has standing.

3. *Komisar Has Stated a Claim Under the UCC*

Komisar asserts that Truist breached its obligations under N.Y. U.C.C. § 4-A, including N.Y. U.C.C. § 4-A-202(2). Komisar's allegations were not intended to just include § 4-A-202(2), but all relevant provisions of § 4-A, including N.Y. U.C.C. § 4-A-211(b) and N.Y. U.C.C. § A-207(b)(2), that are addressed below.

Komisar acknowledges the authority submitted by Truist, which is largely outdated, holds that without privity a claim could not be sustained under § 4-A-202(2) or § 4-A-207. *See Wellton Int'l Express v. Bank of China* (Hong Kong), 612 F. Supp.3d 358, 364 (S.D.N.Y.

Komisar respectfully submits that this matter is distinguishable from the authority cited by Truist and that under competing authority Komisar has stated a claim under the UCC. To that end Komisar relies upon the matter of Sunset Community Health Center, Inc. ("Sunset") v. Capital One Financial Corp. ("Capital One") which although is a Minnesota case is analogous to this matter. 652 F.Supp.3d 1020.

In *Sunset v. Capital One* the relevant facts are as follows: Under false pretenses Sunset sent a $2 million dollar wire to a customer of Capital One on March 3, 2022. Sunset intended to send the wire to Arizona Community Foundation ("ACF"), but a fraudster intercepted the wire instructions and redirected the wire to Capital One. The wire listed ACF as the beneficiary but used the fraudster's bank account number with Capital One. Sunset originated the wire through its account with Foothills Bank. On March 7, 2022, Capital One inquired about the legitimacy of the wire. Sunset confirmed the wire misdescribed ACF and requested a recall. Capital One agreed, but then later deposited the 2 million into the fraudster's account.

Under these facts the Court concluded that Sunset stated a claim under two UCC provisions detailed below:

First, Minn. Stat. Ann .§ 336.4A-211(b)/(UCC.§ 4A-211(b), which applies to cancellation of payment order. A payment order may be unilaterally cancelled, if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the order. To determine if Sunset cancelled timely the Court had to determine if Capital One accepted the funds. Id.

The Court ultimately concluded that,

> "Though barely, Sunset has plausibly alleged a claim to relief on this issue. Sunset claims that it initiated the $2 million transfer on March 3, and that it received the call from Capital One just a few days later. Capital One allegedly requested Sunset "verify the validity and purpose of the wire transfer and confirm whether it wanted the funds released to the account listed on the fraudulent wire instruction." (Am. Compl. ¶ 17 (emphasis added).) Capital One verifying "whether [Sunset] wanted the funds released" suggests that Capital One had not yet actually released the funds to the fraudster at the time of the phone call, and Sunset in fact alleges that Capital One did not deposit the funds into the fraudster's account until after that telephone call. (*Id.* ¶ 23.) If true, Capital One likely had not yet "accepted" the payment order at the time of the telephone call, and Sunset could have unilaterally cancelled the payment order at that time. Id.

Like Sunset, Komisar has stated a claim for cancellation. Komisar's Amended Complaint alleges that:

> As of October 14, 2025, Truist like Capital One inquired about the validity of the wire. (¶25).
>
> On October 14, 2025, Truist was notified that the wire was a fraud by phone and letter and even assigned the following case number UFO number 00000 246 643 to the claim. (¶29).
>
> On October 14, 2025, Chase Bank, the originating bank, requested a recall of the Wire from Truist. (¶26).
>
> Despite the foregoing, Truist issued an official check to the fraudster on October 15, 2025. (¶37).

Under these circumstances, Truist was on notice of the fraud and that the wire had been recalled before Truist issued a check to the fraudster. In other words, these circumstances suggest

that Truist did not deposit the funds into the fraudster account as of October 14, 2025, and that Truist had not likely "accepted" the wire as of October 14, 2025, when Komisar cancelled it. As a result, Komisar has stated a claim under N.Y. U.C.C. § 4-A-211(b), which is identical to the Minnesota Statute and the UCC.

Two, Minn. Stat. Ann .§ 336.4A-207(b)(2)/(UCC.§ 4A-207(b)(2), which applies to misdescription of the Beneficiary. The UCC provides that a beneficiary's bank cannot accept a payment order if the payment order misdescribes the beneficiary. U.C.C. § 4A-207; Minn. Stat. § 336.4A-207. A misdescription occurs when a payment order identifies a beneficiary's name and a bank account number, and the bank knows that those two pieces of identification do not match. U.C.C. § 4A-207(b)(2). The beneficiary bank is only liable if it has actual knowledge of the mismatch. Id.

The Court concluded that,

> "Sunset has adequately pled that Capital One had actual knowledge of a misdescription of the beneficiary prior to the time of payment. The payment order named ACF as the beneficiary but provided the fraudster's account information. (Am. Compl., Ex. A.) Therefore, there was a mismatch. Capital One had actual knowledge of the mismatch when Sunset identified the transfer as fraudulent during the March 7 phone call. Since "time of payment" occurs when funds are made available to a beneficiary, and Sunset alleges that Capital One did not make the funds available to the fraudster until after the March 7 phone call, Sunset adequately pled that Capital One had actual knowledge of the misdescription prior to the time of payment. Therefore, Sunset has plausibly pleaded that Capital One wrongfully accepted the payment order and is liable under § 4A-207(b)(2)". Id.

Like Sunset, Komisar has stated a claim for misdescription of the Beneficiary. Komisar's Amended Complaint alleges that Truist was on notice as of October 14, 2025, that the payment order was to a fraudster. (¶29). Komisar further alleges that Truist did not make the funds available to the fraudster until after October 14, 2025. (¶37). Since "time of payment" occurs when funds are made available to a beneficiary, Komisar has pled that Truist had actual knowledge of the misdescription prior to the time of payment. As a result, Komisar, like Sunset has plausibly pleaded that Truist wrongfully accepted the payment order and is liable under N.Y. U.C.C. § A-207(b)(2). Komisar further submits that N.Y. U.C.C. § A-207(b)(2) is identical to the relevant Minnesota

Statute and UCC. Equally important, if Sunsets claims survived a lack of privity so should Komisar's claims.

Based on these circumstances Komisar has stated a claim under the UCC.

*4. Komisar has stated a Claim for Negligence*

A claim for Negligence can survive Article 4A. Article 4A embodies an intent to restrain common law claims only to the extent that they create rights, duties, and liabilities inconsistent with Article 4A." *Patco Constr. Co. v. People's United Bank*, 684 F.3d 197, 215 (1st Cir. 2012), see also *Approved Mortg. Corp. v. Truist Bank*, No. 22-3163, 106 F. 4th 582 (7th Cir. 2024). A common law claim is not "per se inconsistent with [Article 4A's] regime" merely because the alleged facts include a wire transfer. *Id citing to Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89 (2d Cir. 2010); see *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274–75 (11th Cir. 2003). A court must determine whether Article 4A's "provisions protect against the type of underlying injury or misconduct alleged in a claim." Id citing to *Ma,* 597 F.3d at 89–90. If Article 4A "does not protect against the underlying injury or misconduct alleged," then a common law claim is not preempted. *Id citing to Patco Constr. Co.*, 684 F.3d at 215–16.

Komisar submits that his negligence claim is not preempted and that his claim is analogous to the Plaintiff in *Approved Mortg. Corp. v. Truist Bank*, No. 22-3163, 106 F. 4th 582 (7th Cir. 2024), whose negligence claim was not preempted and survived a motion to dismiss.

Komisar alleges that Truist was negligent by (i) accepting the Wire and failing to suspend Placestolove LLC's account (ii) by failing to safeguard the Wire after it was on notice of fraud and <u>(iii) releasing nearly the entire Wire after it was on notice of the Fraud.</u> (¶54). (emphasis added).

Komisar restated and incorporated all prior allegations in his cause of action for negligence including that, Truist issued an official check to the frauduster for $99,900.05 on October 15, 2025 after being notified on October 14, 2025, of the fraud and assigning claim number to the complaint. (¶37) (¶29). Even Truist's own suspicions were ignored. (¶25).

Similar to Komisar, *Approved Mortg. Corp.* alleged the following facts against Truist Bank. "Despite concerns of fraud, Truist employees provided [fraudster] with $546,658 in casher's checks from the [fraudster's account]". No. 22-3163, 106 F. 4th 582 (7th Cir. 2024).

Upon these facts the Seventh Court of Appeals determined as follows:

> "…Truist's issuance of cashier's checks to [fraudster], the claim is not preempted by Article 4.1. Like the freezing of funds in *Schlegel*, this alleged harm resulted from activity beyond the scope of Article 4.1. 628 S.E.2d at 368. The negligent withdrawal claim does not arise from the wire transfers themselves but from Truist's conduct after crediting the transferred funds to the [fraudsters account]. It exacerbates the earlier transfer injury by making the repayment contemplated by Article 4.1 more difficult and, indeed, unsure.
>
> Article 4.1 does not preempt common law claims for post-transfer activity merely because the activity involves previously transferred funds. See Schlegel, 628 S.E.2d at 368. The later withdrawal of funds obtained in a transfer from the beneficiary's account is not part of the transfer.14 Because Article 4.1 does not govern later withdrawals, Approved Mortgage's proposed duty to prevent suspicious withdrawals is not inconsistent with any duty under Article 4.1.
>
> … But Article 4.1 does not seek to affect the transferred funds indefinitely. Truist has provided no convincing rationale for why the scope of Article 4.1 extends to conduct that occurred after Truist credited the transferred funds to the [fraudster account].
>
> To the extent that Approved Mortgage's negligence claim arises from Truist permitting [fraudster's] withdrawal of cashier's checks from [fraudster's] account, it is not preempted by Article 4.1. Id.

As Komisar alleges that Truist acted negligently when it issued an official check to the fraudster, while having knowledge of the fraud, Komisar's negligence claim, like that of *Approved*

*Mortgage Corp.,* is not preempted.

Equally important, Truist owes a duty of care to Komisar.

Komisar recognizes that banks typically do not owe non-customers a duty to protect them from intentional torts of their customers. *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F.Supp.3d 212 (2022). But Komisar is not alleging such a duty. Rather, Komisar is alleging that Truist owed a duty to safeguard Komisar's Wire upon Truist's own suspicions of fraud, upon being advised of fraud and upon advising Komisar's agent that Truist had not released the wire and froze the fraudster's account. (¶¶25, 27, 28, 29, 31 and 32). In other words, if Truist merely received the wire and released it to the fraudster no duty would arise. But that is not what happened here. Truist raised suspicions of fraud, was notified of fraud and assigned a claim number and even represented that the wire had not been released, only to release the funds in the form of an official check. Id. This conduct created a duty to protect Komisar's funds, which Truist failed to do.

Truist knew full well that Komisar would experience a significant loss if Truist failed to safaeguard the wire. As a result, a special relationship arose that gives rise to a duty of care. *See Adkins v. Sogliuzzo*, 625 Fed. Appx. 565, 569–70 (3d Cir. 2015)

The circumstances above are distinguishable from *Pincover*, where the Court observed that the complaint contains no allegations of any relationship or direct dealings between Plaintiff and either Keybank or Wells Fargo who received stolen funds. 592 F.Supp.3d 212 (2022). Moreover, much of the authority cited by Defendant is irrelevant as it relates to preemption.

Separately, Truist was also aware that the wire had been recalled/cancelled before it was "accepted" thereby implying that Komisar became a customer of Truist and was entitled to the

return of his wire in the same amount that Truist received it. As a customer, Komisar was unquestionably owed a duty of care.

Based on these circumstances Komisar has stated a claim for Negligence.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion should be denied in its entirety.

Dated: New York, New York
July 15, 2026

The Shell Law Firm, PLLC
Attorneys for Plaintiff

By: /s/ Martin Shell
Martin Shell, Esq. (MS, 5689)
11 Broadway, Suite 615
New York, New York 10004
(646) 616- 3983