UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDNEY KOMISAR,<br><br>Plaintiff,<br><br>-v-<br><br>TRUIST BANK,<br><br>Defendant. | 26 Civ. 2510 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to dismiss in a case arising from a wire transfer scam. Plaintiff Sidney Komisar brings this action against defendant Truist Bank ("Truist"), alleging that Truist breached its obligations under the New York Uniform Commercial Code ("N.Y. U.C.C."), and was negligent, by releasing funds intended for Komisar to a scammer, at the direction of Komisar's defrauded attorney. Dkt. 26 ("AC"). Truist moves to dismiss for lack of standing and for failure to state a claim. Dkt. 27 ("Mot.").

For the following reasons, the Court grants Truist's motion to dismiss for failure to state a claim.

## I. Background

### A. Factual Background[1]

Komisar is a New York resident who won a financial settlement in a separate lawsuit in September 2025. AC ¶¶ 2, 5. Truist is a bank headquartered in Charlotte, North Carolina. *Id.* ¶ 3.

---

[1] The Court draws this account from the Amended Complaint. Dkt. 26 ("AC"). For the purpose of resolving the motion to dismiss, the Court accepts all well-pled factual allegations in the AC as true and draws all reasonable inferences in Komisar's favor. *See Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012).

On October 1, 2025, Komisar deposited the settlement proceeds into his lawyer's attorney trust account with Chase Bank ("Chase"). *Id.* ¶ 7. Komisar told his lawyer that he was traveling to England and would later provide instructions with respect to the funds. *Id.* ¶ 9.

Unbeknownst to Komisar and his lawyer, around that time, Komisar's email account was compromised. *Id.* ¶ 12. On or around October 3, 2025, Komisar's lawyer received wire instructions, from an account "appearing to be Komisar's email account but slightly different." *Id.* ¶¶ 13, 15. These stated: "Here is the payment instructions below for payment purposes." *Id.* ¶ 16. The message was electronically signed by "Sidney Komisar." *Id.*

Komisar's lawyer engaged with the fraudster, believing him to be Komisar. *Id.* On or around October 6, 2025, the lawyer sent a test wire of $11.99 to the account identified in the email, which was labeled "Placestolove LLC" and bore the bank address of Truist's Miami Springs, Florida branch. *Id.* ¶ 17. Once the test wire was confirmed received, on or around October 6, 2025, the lawyer sent another wire containing the balance of the funds ($99,988.01) to the same account. *Id.* ¶ 18.

Komisar has no knowledge of, or any affiliation with, Placestolove LLC, which was not the intended beneficiary of Komisar's settlement funds. *Id.* ¶¶ 20–22. Instead, Komisar intended that his lawyer send the funds, in two separate wires, to family members. *Id.* ¶ 23.

On or about October 8, 2025, Komisar attempted to send wire instructions to the lawyer via email. *Id.* ¶ 10. These detailed where the lawyer should direct the funds. *Id.* Komisar's lawyer represents that he never received these instructions. *Id.* ¶ 14.

On October 14, 2025, Komisar notified the lawyer that the intended recipients of the transfers had not received them. *Id.* ¶ 25. The lawyer contacted his bank, Chase, which advised him that the wire was on hold while the receiving bank, Truist, checked for fraud. *Id.* Komisar

and the lawyer continued corresponding, and around 4 p.m. that day, the fraudulent nature of the wire instructions was "discovered." *Id.*

Upon discovering that the wire instructions had been spoofed, the lawyer notified Chase, which requested from Truist an immediate recall of the wire. *Id.* ¶ 26. The lawyer also notified Truist of the fraud (i) by phone on October 14, 2025; (ii) by faxed letter on October 14, 2025; and (iii) by phone on October 15, 2025. *Id.* ¶ 28.

On October 14, 2025, Truist assigned the fraud complaint a case number and informed the lawyer that Placestolove LLC had requested a check to withdraw the wire, but that as of late that evening, the funds remained in the account. *Id.* ¶¶ 29–30.

On the morning of October 15, 2025, the lawyer called the Miami Springs Truist branch, where Placestolove LLC banked, and spoke with the branch manager there. *Id.* ¶ 31. The manager confirmed receipt of the October 14, 2025 letter and advised that the account in question had been put on hold, and that the wire remained in Truist's possession. *Id.* ¶ 32.

That day, the lawyer went to the Truist branch in Hamilton, New Jersey, where he met with the branch manager, who also investigated the matter. *Id.* ¶ 32. The manager confirmed that the account in question had been put on hold and that the wire remained in Truist's possession. *Id.*

The lawyer was also advised that Truist would close the Placestolove LLC account and cease doing business with it, and would return the wire, and that there had been other instances of fraud relating to the Placestolove LLC account. *Id.* ¶¶ 33–34.

On or around November 11, 2025, a demand letter directed at Truist requested the immediate return of the wire. *Id.* ¶ 35. On or about December 29, 2025, Truist issued a letter denying responsibility for the funds. *Id.* ¶ 36.

Komisar was later provided with a copy of an official check from Truist to Placestolove LLC, dated October 15, 2025, in the amount of $99,900.05. *Id.* ¶ 37. The check's memo line recited the account number to which the wire was sent, which matched the number in the scammer's email. *Id.*

**B. Procedural History**

On December 5, 2025, Komisar filed this lawsuit, via a summons and Complaint, in the Superior Court of New Jersey in Mercer County. Dkt. 1-1. The original Complaint brought four counts: for (1) conversion, (2) unjust enrichment, (3) negligence, and (4) negligent infliction of emotional distress. *Id.* at 9–12. On January 9, 2026, Truist removed this case to federal court based on diversity jurisdiction. *See* Dkt. 1 at 2–3. On March 23, 2026, on the parties' stipulation, the case was transferred to this District, where it was assigned to this Court. *See* Dkts. 10–11.

On May 13, 2026, Truist filed a motion to dismiss the Complaint. Dkt. 21. On May 14, 2026, the Court issued an amend-or-oppose order instructing Komisar either to amend the Complaint in response to the motion, or to oppose the motion. Dkt. 22. On June 3, Komisar filed the Amended Complaint ("AC"), the operative pleading today, which brings two claims, one based on the N.Y. U.C.C. (Count One) and one sounding in negligence (Count Two). Dkt. 26. On June 24, 2026, Truist moved to dismiss the AC. Dkt. 27. On July 15, 2026, Komisar opposed. Dkt. 28. On July 30, 2026, Truist replied. Dkt. 33.

**II. Applicable Legal Standards**

Truist's motion to dismiss, to the extent it claims a lack of standing, implicates Federal Rule of Civil Procedure 12(b)(1). *See Incinia Contracting, Inc. v. Evanston Ins. Co.*, 806 F. Supp. 3d 372, 376 (S.D.N.Y. 2025). "To survive a motion to dismiss under Rule 12(b)(1), a

plaintiff bears the burden of clearly alleging facts demonstrating each element of standing." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975)).

Truist's motion to dismiss is otherwise governed by Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the Court must accept all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet is "inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Article III Standing

Truist moves to dismiss on the ground that Komisar lacks Article III standing. Mot. at 3.

Article III's restriction of the judicial power to the resolution of cases and controversies "requires that the party invoking federal jurisdiction have standing—the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (emphasis omitted) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)). "To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be

redressed by a favorable decision." *Bernstein v. City of New York*, 621 Fed. App'x 56, 57 (2d Cir. 2015) (summary order) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Komisar has adequately pled Article III standing. As to injury in fact, the injury Komisar claims here is monetary: Due to Truist's alleged violations of law, he claims, he lost $100,000. AC ¶¶ 46, 55. A monetary injury is the paradigmatic injury in fact. "If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *see also id.* ("monetary harms," alongside physical harms, are "most obvious" among types of harm that "readily qualify as concrete injuries"). As to causation, the loss, as pled, was caused by Truist's failure to detect and block the scam, in alleged breach of the U.C.C. and its common-law duty of care. *See Kent v. PoolTogether, Inc.*, 676 F. Supp. 3d 144, 150 (E.D.N.Y. 2023) (causation satisfied where money to which plaintiff is entitled is "wrongfully withheld"); *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 363 (S.D.N.Y. 2020) (allegation that "had the defendants not executed the payment order, [plaintiff] would have suffered no harm" satisfies causation). And as to redressability, if Truist were found liable, its return of the $100,000 to Chase, the bank at which Komisar's attorney account was held, would likely result in Komisar's recouping those funds. *See Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 37 (2d Cir. 2023) (redressability satisfied where "the relief sought would serve to . . . eliminate any effects of the alleged legal violation that produced the injury in fact" (cleaned up)).

Truist counters that, because Komisar's claim arises from a transfer not by him, but by his lawyer from a law-firm trust account, Komisar lacks standing to bring a claim against Truist. *See* Mot. at 3. Truist relies exclusively on *New York v. Barclays Bank of N.Y.* ("*Barclays*"), 76 N.Y.2d 533 (N.Y. 1990), which held that actual or constructive possession of a check is a

prerequisite to a cause of action by a named payee against a depositary bank. *Id*. at 539. But *Barclays* did not address Article III standing. It applied "established principles of negotiable instruments law"—namely, that "a check has no valid inception until delivery," and that a payee's interest in a negotiable instrument vests upon actual or constructive possession. *Id*. at 536. This case is distinct, in that the settlement funds here were paid out "by check made payable to Komisar," which Komisar "directly deposited" in his lawyer's trust account. AC ¶¶ 6–7. *Barclays* is thus both legally and factually inapposite.

The other cases on which Truist relies address statutory standing under the U.C.C. *See Deaconess Ass'ns, Inc. v. Wells Fargo Bank, N.A.*, No. 21 Civ. 1854, 2022 WL 7690568, at *1 (D. Or. Sep. 19, 2022) ("Deaconess lacks statutory standing to sue defendant."), *report and recommendation adopted*, No. 21 Civ. 1854, 2022 WL 7584478 (D. Or. Oct. 13, 2022); *Nirav Ingredients, Inc. v. Wells Fargo Bank, N.A.*, 516 F. Supp. 3d 535, 540 (W.D.N.C. 2021) ("Nirav lacks the necessary statutory standing to sue Wells Fargo under the UCC."), *aff'd*, No. 21-1893, 2022 WL 3334626 (4th Cir. Aug. 12, 2022); *Monarch Air Grp., LLC v. JPMorgan Chase Bank, N.A.*, No. 23-60770, 2023 WL 11904279, at *6–7 (S.D. Fla. Oct. 6, 2023) ("[B]ecause Plaintiffs fail to allege privity with respect to the payment orders at issue, they lack standing to assert a claim against Chase under Article 4A [of the U.C.C. as adopted in Florida]."); *Imperium Logistics, LLC v. Truist Fin. Corp.*, 686 F. Supp. 3d 600, 605–06 (E.D. Mich. 2023) ("[T]he available statutory remedies do not give Plaintiffs any cause of action.").

One of the cases Truist cites also addresses Article III standing, and on that point, it does not assist Truist. The court in *Lukis Global Corporation v. Comerica Bank* held that, although the plaintiff lacked statutory standing, he "ha[d] Article III standing" because the complaint, "[a]lthough in a somewhat conclusory fashion, . . . alleged sufficient facts demonstrating some

eventual and predictable right to payoff funds" that were misdirected, which "established a causal connection between Defendants' conduct and Plaintiff's lack of repayment." No. 26 Civ. 2150, 2026 WL 2127238, at *3 (C.D. Cal. July 21, 2026).

The case on which Komisar principally relies as to Article III standing is squarely on point. In *Wellton International Express v. Bank of China (Hong Kong)*, Judge Oetken held that both the sender and intended recipient of an electronic funds transfer had constitutional standing to sue an intermediary bank. 612 F. Supp. 3d at 363–64. The injury-in-fact requirement was satisfied because the allegation that Wellton had been "deprived of money that was clearly intended for it" stated an "obvious injury" supporting standing. *Id*. at 363. As to causation, JP Morgan's argument "that there is no causal connection between that harm and [its] conduct because JP Morgan was required under the UCC to execute an authorized payment order" failed, because it presents "a merits question rather than a standing question." *Id*. And the allegation that, "had the defendants not executed the payment order, [plaintiff] would have suffered no harm," pled causation and redressability. *Id*.; *see also Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 279 (S.D.N.Y. 2024) (causation and redressability requirements are both addressed to "whether the plaintiff's injury-in-fact is too far removed from the challenged" action or potential relief).

There is thus Article III standing here. *See, e.g.*, *Nunez v. Exec. Le Soleil N.Y. LLC*, No. 22 Civ. 4262, 2023 WL 3319613, at *3 (S.D.N.Y. May 9, 2023) (delay in payment of money owed, "in and of itself, constitutes a concrete harm that suffices for purposes of Article III"); *Espinal v. Sephora USA, Inc.*, No. 22 Civ. 3034 (PAE) (GWG), 2022 WL 16973328, at *1 (S.D.N.Y. Nov. 16, 2022) (allegation that plaintiffs were "temporarily deprived of money owed to" them satisfies injury-in-fact requirement), *report and recommendation adopted*, 2023 WL

2136392 (S.D.N.Y. Feb. 21, 2023); *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("temporary deprivation of money to which plaintiff has a right" can establish Article III standing).

**B. N.Y. U.C.C. Claim**

N.Y. U.C.C. § 4–A ("Article 4–A") governs electronic funds transfers. *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 87 (2d Cir. 2010). Count One alleges that, by releasing the funds to Placestolove LLC after being notified that the wire request was fraudulent, Truist "breached its obligations under N.Y. U.C.C. § 4–A, including N.Y. U.C.C. § 4–A–202(2)." AC ¶ 44. Truist moves to dismiss on the grounds that (1) Komisar lacks privity with Truist under Article 4–A, and (2) the AC does not state a claim under § 4–A–202(2). *See* Mot. at 4–8. Both arguments are meritorious.

**1. Privity**

Article 4–A defines a wire transfer as a specified "series of transactions." N.Y. U.C.C. § 4–A–104. Each series is comprised of two payment orders: First, an "originator" (here, Komisar or his lawyer) initiates a payment order with his bank (here, Chase), pursuant to which the bank receives the funds directly from the originator. *Id.* § 4–A–104(3). Second, the originator's bank initiates a payment order with the beneficiary's bank (here, Truist). *Id.* § 4–A–103(1)(c). The beneficiary's bank's acceptance of the second payment order completes the transfer. *Id.* § 4–A–104. Having accepted the payment, the beneficiary's bank then credits it to the account identified in the second payment order. *See id.* § 4–A–103(1)(c).

Article 4–A permits only persons in privity with a beneficiary's bank to assert claims against that bank. *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) ("[Section] 4–A–402 allows each sender of a payment order to seek refund only from the

receiving bank it paid."). As the Second Circuit has recognized, this rule serves sound policy interests in certainty of legal risk and finality:

> To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer.

*Id*. The privity requirement limits Article 4–A's remedy to apply "only between the parties to a particular payment order and not to the parties to the funds transfer as a whole." *Wellton*, 612 F. Supp. 3d at 364.

Neither Komisar nor his lawyer is in privity with Truist, because the payment order to which Komisar's lawyer was a party—the first order—involved Chase, not Truist. *See* AC ¶¶ 25–26; *Miceli Contracting Co. v. JPMorgan Chase Bank N.A.*, No. 24 Civ. 5923, 2025 WL 3239668, at *8 (E.D.N.Y. Aug. 19, 2025) ("Under the UCC Article 4A, only the receiving bank that transmits the payment order to the beneficiary bank has standing to assert a claim against the beneficiary bank; the originator does not have standing."). Chase was in privity with Truist, but it is not a plaintiff in this lawsuit. The privity requirement thus forecloses Komisar from obtaining Article 4–A relief against Truist. *See, e.g.*, *Wellton*, 612 F. Supp. 3d at 364 (dismissing Article 4–A claim by payment originator against beneficiary's bank for lack of privity); *218 Broadway, LLC v. J.P. Morgan Chase Bank, N.A.*, No. 25 Civ. 7386, 2026 WL 2364628, at *12 (S.D.N.Y. Aug. 14, 2026) (same); *Frankel-Ross v. Congregation OHR Hatalmud*, No. 15 Civ. 6566, 2016 WL 4939074, at *3 (S.D.N.Y. Sep. 12, 2016) (same).

### 2. Failure to State a Claim

Truist separately moves to dismiss the U.C.C. claim on the ground that the AC does not state a claim under N.Y. U.C.C. § 4–A–202(2).[2]

Section 4–A–202(2) imposes liability for unauthorized wire transfers between "a bank and its customer." N.Y. U.C.C. § 4–A–202(2); *see also L&M Constr. Dry Wall Inc. v. Wells Fargo Bank, N.A.*, No. 20 Civ. 608951, 2022 WL 20472238, at *3 (N.Y. Sup. Ct. Mar. 21, 2022) ("Pursuant to UCC 4–A–202, a bank is liable to *its customer* for the *unauthorized* transfer of funds from a customer's account unless the bank can demonstrate that 'a commercially reasonable security procedure is in place.'" (emphasis in original)). Where "the plaintiff is admittedly not a customer of [the bank-defendant] and authorized the wire transfer, its allegations sounding in violations of [N.Y. U.C.C.] §§ 4–A–202 [*inter alia*] are insufficiently pled." *Id*. at 4.

[2] Count One, for "UCC Violation," alleges that Truist "breached its obligations under N.Y. U.C.C. § 4–A, including N.Y. U.C.C. § 4–A–202(2)." AC ¶ 44. In opposing the motion to dismiss, which addressed only § 4–A–202(2), Komisar abandoned defense of the § 4–A–202(2) claim and argued instead that the AC's "allegations were not intended to just include § 4–A–202(2), but all relevant provisions of § 4–A, including N.Y. U.C.C. § 211(b) [cancellation] and N.Y. U.C.C. § 207(b)(2) [misdescription of beneficiary]." Opp'n at 6–8. The AC did not cite those provisions. *See* AC ¶¶ 39–47 (Count One). "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (quoting Fed. R. Civ. P. 8(a)(2)). Because the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *id*., courts sometimes give plaintiffs an opportunity to amend a complaint to "specify[] the provision(s) of UCC Article 4A upon which [they seek] to rely" instead of dismissing a complaint outright. *Huang v. Hong Kong & Shanghai Banking Corp.*, No. 20 Civ. 3548, 2022 WL 4123879, at *6 (S.D.N.Y. Sep. 9, 2022). Komisar took the opportunity to amend his complaint after Truist's first motion to dismiss, but did not cite any N.Y. U.C.C. provision other than § 4–A–202(2). *See* Dkts. 21 (first motion to dismiss), 22 (amend-or-oppose order), 26 (amended complaint). In any event, any claim under Article 4–A fails for lack of privity, for the reasons above, such that the Court cannot discern any "viable claim under the [Article 4–A] provisions [first] identified" in Komisar's opposition brief. *Huang*, 2022 WL 4123879, at *6.

Placestolove LLC, not Komisar, is Truist's customer in this transaction. The AC acknowledges as much. *See* AC ¶ 53 ("While Komisar was not a client of Truist, Truist owed a duty to Komisar upon being notified of a fraud perpetuated by its customer [Placestolove LLC].").

Moreover, as pled, Komisar's lawyer authorized the transfer. *Id.* ¶ 18 ("[O]nce the test wire was confirmed received, the lawyer sent another wire."). Where a plaintiff (or, here, his lawyer) "authorized the transfer, even erroneously, no cause of action lies." *Wellton*, 612 F. Supp. 3d at 364; *see also Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 81 (S.D.N.Y. 2024) (transfer is "authorized" where plaintiff was "induced by the fraudulent representations of a third party to authorize the transfer orders"); *L&M Constr.*, 2022 WL 20472238, at *3 (where "plaintiff admits that it only became aware that it was the victim of a fraudulent diversion *after* the payment was sent," it "is reasonable to conclude [] that the plaintiff authorized the payment at the time of the transfer").

Because the AC's allegations do not involve (1) "a bank and its customer" or (2) an "unauthorized" transfer, it does not state a claim under N.Y. U.C.C. § 4–A–202(2). *See, e.g.*, *L&M Constr.*, 2022 WL 20472238, at *3; *Wellton*, 612 F. Supp. 3d at 364.

For the reasons above, the Court dismisses Count One.

### C. Negligence Claim

Count Two alleges that Truist "had a duty to safeguard" Komisar's wire after being notified of Placestolove LLC's fraud, AC ¶¶ 50–51, which Truist breached by (1) accepting the wire, (2) failing to suspend Placestolove LLC's account, (3) failing to safeguard the wire, and (4) releasing almost all of the wire while on notice of the fraud, *id.* ¶¶ 53–54.

Truist moves to dismiss on the grounds that Count Two (1) is preempted by Article 4–A, and, in any event, (2) does not state a claim. *See* Mot. at 8–14. Both arguments are meritorious.

### 1. Preemption by Article 4–A

Article 4–A "governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers." *Niram, Inc. v. Sterling Nat'l Bank*, 697 F. Supp. 3d 15, 21 (S.D.N.Y. 2023) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 797 (2d Cir. 2011)). It is a "comprehensive body of law" that elaborates "precise and detailed rules to assign responsibility." *Ma*, 597 F.3d at 89 (quoting N.Y. U.C.C. § 4–A–102 cmt.). Accordingly, Article 4–A preempts common-law claims "when such claims would impose liability inconsistent with the rights and liabilities expressly created by" it. *Fischer & Mandell*, 632 F.3d at 797. The "critical inquiry" governing Article 4–A preemption "is whether [Article 4–A's] provisions protect against the type of underlying injury or misconduct alleged in a claim." *Ma*, 597 F.3d at 89.

As to Count Two's theory of liability, the answer is yes. Courts in this Circuit have consistently held that "claims that [a defendant bank] violated its duty of care by negligently honoring unauthorized transfers fall[] entirely within the coverage of [Article 4–A], which creates a comprehensive risk allocation for unauthorized transfers, and are thus preempted." *Jajati v. JPMorgan Chase Bank, N.A.*, 711 F. Supp. 3d 169, 177 (E.D.N.Y. 2024) (cleaned up); *see also 2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 238–39 (S.D.N.Y. 2011), *aff'd*, 503 Fed. App'x 51 (2d Cir. 2012) (summary order).

Plaintiffs in other cases have contested the application of that principle to cases involving *authorized* wire transfers, although Komisar does not do so explicitly. *Compare* Dkt. 28 ("Opp'n") at 8 *with Pitrone v. M&T Bank, N.A.*, 818 F. Supp. 3d 503, 507–08 (W.D.N.Y. 2026), *and Markatos*, 760 F. Supp. 3d at 82. But that argument, even if made here, would lack force.

When the allegation is that a defendant bank failed "to notice, investigate, and intervene" to stop an authorized, fraudulent transfer, courts have rightly resisted the argument that Article 4–A preemption does not apply because the transfer was authorized:

> Plaintiff's claim, at its core, is that he was induced by the fraudulent representations of a third party to authorize the transfer orders, which Defendant accepted without utilizing any heightened measures to protect Plaintiff from said fraud. Put another way, Plaintiff's claim is entirely dependent on Defendant's *execution* of those transfers—essentially, that Defendant improperly processed them by failing to implement or engage in necessary security procedures. Yet, the courts have held that these procedures are precisely the type of "mechanics" governed by Article 4–A and Plaintiff's claim is thus preempted.

*Markatos*, 760 F. Supp. 3d at 81–82. The contrary holding—which would impose common-law liability on a bank for processing an authorized transfer—would "invert [Article 4–A's] risk allocation scheme in a way that is fundamentally incompatible with" that provision. *Id*. at 82. For that reason, courts across the country, analyzing claims under the U.C.C. as adopted in their jurisdictions, "have similarly concluded that Article 4–A may preempt certain common law claims where the customer authorized wire transfers, even when that authorization was induced by third-party fraud." *Id*. (collecting cases).

Such preemption is warranted here. Komisar's common-law theory of liability is "simply another way of saying that [Truist] should have canceled the wire transfer[] upon learning of the fraud." *Jajati*, 711 F. Supp. 3d at 176; *see also* AC ¶¶ 51–54 (premising negligence claim on Truist's "fail[ure] to safeguard" the wire and its "releasing nearly the entire" wire after "being notified of a fraud"). It is a complaint "about conduct that is squarely within the ambit of" Article 4–A, because Article 4–A controls "who bears the loss when an authorized transaction is made that the sender later attempts to rescind." *Jajati*, 711 F. Supp. 3d at 176–77. Although § 202(2) permits a bank to avoid liability for unauthorized transfers by abiding by certain security procedures, § 202(1) "does not require banks to bear the risk of loss for failing to abide

by certain security procedures where the sender has *directly authorized the transfer*." *Beck v. Metro. Bank Holding Corp.*, 747 F. Supp. 3d 442, 458 (E.D.N.Y. 2024) (emphasis in original); *see also Wellton*, 612 F. Supp. 3d at 363–64 (security measures required to avoid liability under § 202(2) not required where wire transfer "was unequivocally authorized").

For this reason, imposing negligence liability on Truist where Komisar's lawyer authorized the payment orders "based on the alleged fraudulent representations of third parties" would be "inconsistent with Article 4–A." *Beck*, 747 F. Supp. 3d at 458. Article 4–A establishes that, "where the plaintiff duly authorized [the] wire transfer requests at issue—even where the plaintiff was allegedly induced to take that action by various fraudulent representations made by [a] third party—there is no legally cognizable cause of action under Section 202." *Id.* (cleaned up) (quoting *Blum v. Citibank, N.A.*, 81 N.Y.S.3d 51, 52 (N.Y. App. Div. 2018)).

Count Two, in sum, rests "on a theory of liability that directly contravenes the rights and liabilities defined in Article 4–A." *Id.* at 459. It is thus preempted. *See, e.g.*, *Jajati*, 711 F. Supp. 3d at 176–77 (negligence and gross negligence claims by plaintiff who authorized wire transfers that proved fraudulent preempted by Article 4–A); *Fischer & Mandell LLP v. Citibank, N.A.*, No. 9 Civ. 6916, 2010 WL 2484205, at *7–8 (S.D.N.Y. May 27, 2010) (negligence claim by plaintiff who authorized wire transfer then attempted to cancel it preempted by Article 4–A); *Phil & Kathy's, Inc. v. Safra Nat'l Bank of N.Y.*, 595 F. Supp. 2d 330, 332–33 (S.D.N.Y. 2009) (nonspecific claims by plaintiff who authorized wire transfers then argued one should have been canceled preempted by Article 4–A).

### 2. Failure to State a Negligence Claim

Truist separately moves to dismiss Count Two on the ground that the AC fails to state a claim for common-law negligence. *See* Mot. at 12–14.

"To establish a prima facie case of negligence under New York law, the plaintiff must allege three elements: '(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach.'" *McCarthy v. JP Morgan Chase Bank*, 772 F. Supp. 3d 298, 314 (E.D.N.Y. 2025) (quoting *Serengeti Express, LLC v. JP Morgan Chase Bank, N.A.*, No. 19 Civ. 5487, 2020 WL 2216661, at *3 (S.D.N.Y. May 7, 2020)).

Under New York law, "banks do not owe non-customers a duty to protect them from the intentional torts of their customers." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (cleaned up); *see also Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 228–29 (S.D.N.Y. 2022) (Engelmayer, J.) ("It is well-settled under New York law that banks do not owe non-customers a duty of care in this context."); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("Neither the Plaintiffs nor the Court have been able to locate a case which even suggests that New York law imposes upon banks a duty to protect non-customers from a fraud involving depository accounts." (emphasis omitted)).

Komisar asserts in his brief that "Truist knew full well that Komisar would experience a significant loss if Truist failed to [safeguard] the wire." Opp'n at 10. That allegation is missing from his Complaint. But even had such knowledge been alleged, it would not create a special relationship giving rise to a duty of care. A reason why New York law insulates banks from negligence actions by non-customers absent a special relationship giving rise to a duty of care is that, "[w]ith billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public." *Lerner*, 459 F.3d at 286–87. That rationale applies whether or not the bank appreciated the magnitude of the harm to a non-customer that could flow from an intentional tort by a third party.

And the AC "does not contain any allegations of any relationship or direct dealings" between Komisar and Truist. *Pincover*, 592 F. Supp. 3d at 229. Nor does it allege that Komisar "at any point became a customer" of Truist. *Id.* Even after the fraud had been perpetrated, it was Komisar's lawyer, not Komisar, who engaged with Truist, discussed the fraud with the branch manager, and was informed that the account was suspended. *See* AC ¶¶ 28, 30–33. The AC thus does not allege facts from which it can be inferred that Truist owed Komisar a duty of care, as required to state a negligence claim. *See, e.g.*, *In re Agape Litig.*, 681 F. Supp. 2d at 360; *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 27 (S.D.N.Y. 2009), *aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A.*, 382 Fed. App'x 107 (2d Cir. 2010) (summary order); *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 1 Civ. 10726, 2003 WL 470611, at *5–6 (S.D.N.Y. Feb. 25, 2003).

For these reasons, the Court dismisses Count Two.

**CONCLUSION**

For the above reasons, the Court dismisses the AC for failure to state a claim. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 21 and 27, and to close this case.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: October 14, 2026
New York, New York